# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>DREIER LLP,<br><br>　　　　　　　　　Debtor. | Chapter 11<br><br>Case No. 08-15051 (SMB) |
| SHEILA M. GOWAN, CHAPTER 11 TRUSTEE FOR DREIER LLP,<br><br>　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>WESTFORD ASSET MANAGEMENT LLC, ET AL.,<br><br>　　　　　　　Defendants. | Adv. Proc. No. 10-5447 (SMB) |

**WESTFORD DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

## TABLE OF CONTENTS

**Page**

Preliminary Statement ........................................................................................................ 1

Statement of Facts ............................................................................................................. 2

    A.    The Westford Defendants ................................................................................ 2

        1.    The Westford Funds ............................................................................. 2

        2.    The Westford Non-Transferees ............................................................ 3

            (a)    Steve Stevanovich ..................................................................... 3

            (b)    WAM, SGS, and WGAM ......................................................... 3

        3.    The Westford Agents ........................................................................... 4

    B.    The Transfers Between the Westford Defendants and DLLP ....................... 4

Prior Proceedings .............................................................................................................. 6

Argument ........................................................................................................................... 6

    A.    Standard for Summary Judgment Under Rule 56 .......................................... 6

    B.    The Court Should Grant Partial Summary Judgment in Favor of the
Westford Non-Transferees Because They Received No Transfers ................ 8

    C.    The Court Should Grant Partial Summary Judgment in Favor of the
Westford Agents ........................................................................................... 11

Conclusion ...................................................................................................................... 13

## TABLE OF AUTHORITIES

**Page**

**CASES**

Brenner v. Philips, Appel & Walden, Inc.,
  1997 WL 33471053 (S.D.N.Y. July 22, 1997) ................................................................8, 9, 10

Christy v. Alexander & Alexander of N.Y. Inc. (In re Finley, Kumble, Wagner, Heine,
  Underberg, Manley, Myerson & Casey),
  130 F.3d 52 (2d Cir. 1997)..........................................................................................11, 12

CNB Int'l, Inc. Litig. Trust v. Lloyds TBS Bank, PLC (In re CNB Int'l, Inc.),
  440 B.R. 31 (Bankr. W.D.N.Y. 2010) ..................................................................................12

DeFabio v. East Hampton Union Free Sch. Dist.,
  623 F.3d 71 (2d Cir. 2010)......................................................................................................7

Fay v. Oxford Health Plan,
  287 F.3d 96 (2d Cir. 2002)..................................................................................................6, 7

FDIC v. Porco,
  75 N.Y.2d 840 (1990) ............................................................................................................8

Foufas v. Leventhal,
  1995 WL 332020 (S.D.N.Y. June 5, 1995) ............................................................................8

Gallant v. Kanterman,
  603 N.Y.S.2d 315 (1st Dep't 1993) ........................................................................................8

Geltzer v. D'Antona (In re Cassandra Grp.),
  312 B.R. 491 (Bankr. S.D.N.Y. 2004)..................................................................................12

Gnazzo v. G.D. Searle & Co.,
  973 F.2d 136 (2d Cir. 1992)....................................................................................................7

Hooker Atl. (7) Corp. v. Hocker (In re Hooker Invs., Inc.),
  155 B.R. 332 (Bankr. S.D.N.Y. 1993) ..................................................................................12

Huff v. Cruz Contracting Corp.,
  643 F. Supp.2d 344 (S.D.N.Y. 2009).....................................................................................7

In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.,
  824 F. Supp.2d 524 (S.D.N.Y. 2011).....................................................................................7

In re Moskowitz,
  85 B.R. 8 (E.D.N.Y. 1988) ...................................................................................................12

# TABLE OF AUTHORITIES
### (cont'd)

Page

Jeffreys v. City of N.Y.,
    426 F.3d 549 (2d Cir. 2005)..................................................................................................7

Konikoff v. Prudential Ins. Co. of Am.,
    234 F.3d 92 (2d Cir. 2000)....................................................................................................7

McHale v. Boulder Capital LLC (In re 1031 Tax Group, LLC),
    439 B.R. 47 (Bankr. S.D.N.Y. 2010)..................................................................................11

Paradigm BioDevices, Inc. v. Viscogliosi Bros.,
    842 F. Supp.2d 661 (S.D.N.Y. 2012)....................................................................................9

Roselink Investors, LLC v. Shenkman,
    386 F. Supp. 2d 209 (S.D.N.Y. 2004)......................................................................9, 10, 11

Sec. Investor Prot. Corp. v. Stratton Oakmont, Inc.,
    234 B.R. 293 (Bankr. S.D.N.Y. 1999).................................................................................11

Silverman v. United Talmudical Acad. Torah Vyirah, Inc. (In re Allou Distribs., Inc.),
    446 B.R. 32 (Bankr. E.D.N.Y. 2011).....................................................................................9

Stern v. Singh Factors, LLC (In re Shore to Shore Realty Inc.),
    Case No. 8-08-72760 (REG), Adv. Pro. No. 8-09-08296 (REG), 2011 WL 350526
    (Bankr. E.D.N.Y. Feb. 01, 2011) ..........................................................................................8

**STATUTES**

11 U.S.C. § 550(a)(1)....................................................................................................................11

**RULES**

Fed. R. Bankr. P. 7056...................................................................................................................1

Fed. R. Civ. P. 56.......................................................................................................................1, 6

Defendants Westford Asset Management LLC; SGS Asset Management; Stafford Towne, Ltd.; Adams International Trading, Ltd.; Carston Spires, Ltd.; Bennington International Holdings, Ltd.; Westford Special Situations Fund, Ltd.; Westford Special Situations Master Fund L.P.; Epsilon Global Master Fund, LP; Epsilon Global Master Fund II, LP; Epsilon Distressed Strategies Master Fund, LP; Westford Global Asset Management Ltd.; and Steve Stevanovich (collectively, the "Westford Defendants") respectfully submit this memorandum of law in support of their motion for partial summary judgment to dismiss claims against certain of the Westford Defendants brought by Sheila M. Gowan, Chapter 11 Trustee for Dreier LLP (the "Trustee") in her First Amended Complaint (the "Amended Complaint"), dated April 7, 2011, pursuant to Rule 56 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure.

## PRELIMINARY STATEMENT

Marc Dreier ("Dreier") defrauded the Westford Defendants into making loans totaling in excess of $100 million, for the primary purpose of funding operations and expansion of his law firm. Certain of the Westford Defendants received repayment of funds in accordance with the terms set forth in the false loan documents. In her Amended Complaint, the Trustee seeks to avoid as fraudulent conveyances payments Dreier LLP made to the Westford Defendants.

Certain other Westford Defendants – Steve Stevanovich ("Mr. Stevanovich"), Westford Asset Management LLC ("WAM"), SGS Asset Management ("SGS"), and Westford Global Asset Management, Ltd. ("WGAM") (collectively, the "Westford Non-Transferees") – did not receive any funds, payments, or benefits in connection with the loans the Westford Defendants made to DLLP, purportedly to Solow Realty and Development Corp. (the "Solow Notes"). Certain other Westford Defendants – Stafford Towne, Ltd. ("Stafford"), Bennington International Holdings, Ltd. ("Bennington"), Adams International Trading, Ltd. ("Adams"), and

Carston Spires, Ltd. ("Carston") (collectively, the "Westford Agents") – acted as mere conduits in receiving payments on the Solow Notes on behalf of the Westford Defendants. Thus, the claims against the Westford Non-Transferees and the Westford Agents under both the Bankruptcy Code and New York law should be dismissed.

## STATEMENT OF FACTS

### A.   The Westford Defendants

The Westford Defendants include a group of investment funds, their agents, and managers whose ultimate investors include various public and private retiree plans. Westford Defendants' Rule 56.1 Statement ¶ 1.[1] The Westford Defendants carry out investment strategies on behalf of investors. Id. at ¶ 2.

#### 1.   The Westford Funds

Westford Special Situations Master Fund L.P. ("WSSMF"); Epsilon Global Master Fund, LP; Epsilon Global Master Fund II, LP; Westford Special Situations Fund, Ltd.; and Epsilon Distressed Strategies Master Fund, LP (collectively, the "Westford Funds") are funds that operate on behalf of investors. Id. at ¶ 3. The Westford Funds, at all times, owned all money invested on behalf of the ultimate investors. Id. at ¶ 4.

Between 2004 and 2007, Solow Notes outstanding to the Westford Defendants never represented more than 3.5% of the Westford Defendants total assets under management. Id. at ¶ 43. The vast majority of the cash received by and disbursed to the Westford Funds had nothing to do with the Solow Notes. Id.

---

[1]   Citations to "Westford Defendants' Rule 56.1 Statement" refer to Westford Defendants' Statement of Undisputed Material Facts in Support of Motion for Partial Summary Judgment, filed contemporaneously herewith.

### 2. The Westford Non-Transferees

#### (a) Steve Stevanovich

Mr. Stevanovich is the president of WAM, SGS, and WGAM. Id. at ¶ 5. Mr. Stevanovich received no transfers, compensation, or other benefits directly from DLLP. Id. at ¶ 8. Any funds Mr. Stevanovich may have received indirectly from DLLP came solely in connection with work by WAM, SGS, and WGAM as advisors to the Westford Defendants. Id. at ¶ 9. Even though Mr. Stevanovich is compensated for his work administering the Westford Funds, he did not receive any compensation directly from any of the Westford Defendants between 2004 and 2008. Id. at ¶ 6-7.

The Amended Complaint describes Mr. Stevanovich as "founder, owner, officer, director, and manager of the Westford entities," who supposedly "directed, approved, and benefited from the transfers" received by the Westford Defendants. Am. Compl. [Docket No. 14] ¶ 19. Yet, in Mr. Stevanovich's capacity as president of WAM, his compensation was never tied to receipt of payments from DLLP. Westford Defendants' Rule 56.1 Statement ¶ 6.

#### (b) WAM, SGS, and WGAM

WAM, SGS, and WGAM serve as investment advisors to the Westford Funds. Id. at ¶ 10. WAM, SGS, and WGAM have no investors and retain no investment monies. Id. at ¶ 11. As investment managers, WAM, SGS, and WGAM make decisions on behalf of the Westford Funds on where to allocate money and how money held by the Westford Funds should be invested. Id. at ¶ 12. WAM, SGS, and WGAM's only assets are limited furniture and fixtures and, at times, funds to pay employee compensation. Id. at ¶ 13. WAM, SGS, and WGAM did not receive any payments directly from DLLP. Id. at ¶ 14. Any funds WAM, SGS, and WGAM may have received indirectly from DLLP came as compensation for work by WAM, SGS, and WGAM as investment advisors to other Westford entities. Id. at ¶ 15. In addition, any payments

- 3 -

WAM, SGS, and WGAM received from other Westford entities were determined by fixed contract fees, not as distributions from investments. Id. at ¶ 16.

### 3. The Westford Agents

The Westford Agents – Stafford, Bennington, Adams, and Carston – are special purpose entities ("SPEs") owned by the Westford Funds. Id. at ¶ 17. Generally, Stafford acted as agent for Epsilon Global Master Fund, LP; Bennington acted as agent for Epsilon Global Master Fund II, LP; Adams acted as agent for WSSMF; and Carston acted as agent for Epsilon Distressed Strategies Master Fund, LP. Id. at ¶ 18.

The Westford Agents had no control over any funds any Westford Defendant received in connection with the Solow Notes and had no discretion over how those funds were used. Id. at ¶ 20. The Westford Agents did not receive any funds as repayment on the Solow Notes. Id. at ¶ 21. The Westford Agents have no employees or operations. Id. at ¶ 19. The Westford Agents did not have bank accounts. Id. at ¶ 22.

## B. The Transfers Between the Westford Defendants and DLLP

Between 2004 and 2007, Dreier sold certain of the Westford Defendants seven note issuances that Dreier falsely claimed were issued by Solow Realty and Development Corp. Id. at ¶ 25.

On January 7, 2004, Westford Defendants Stafford, Bennington, and WSSMF purchased notes with an aggregate face value of $15 million. Id. at ¶ 26. The outstanding principal balance of the notes, accrued interest, and fees – totaling $16,825,001 – were repaid in full in or around January 7, 2005. Id. at ¶ 27.

On June 24, 2004, Westford Defendants Stafford, Bennington, and WSSMF purchased a second series of notes with an aggregate face value of $15 million. Id. at ¶ 28. The outstanding

principal balance of the notes, accrued interest, and fees – totaling $20,781,666 – were repaid in full in or around December 29, 2006. Id. at ¶ 29.

On January 14, 2005, Westford Defendants Stafford, Bennington, and WSSMF purchased a third series of notes with an aggregate face value of $30 million. Id. at ¶ 30. The outstanding principal balance of the notes, accrued interest, and fees – totaling $34,116,668 – were repaid in full in or around January 14, 2006. Id. at ¶ 31.

On February 10, 2006, Westford Defendants Stafford, Bennington, and WSSMF purchased a fourth series of notes with an aggregate face value of $5 million. Id. at ¶ 32. The outstanding principal balance of the notes, accrued interest, and fees – totaling $5,796,944 – were repaid in full in or around December 29, 2006. Id. at ¶ 33.

On June 29, 2006, Westford Defendant WSSMF purchased a fifth note with an aggregate face value of $10 million. Id. at ¶ 34. The outstanding principal balance of the note, accrued interest, and fees – totaling $11,820,833 – were repaid in full in or around June 29, 2007. Id. at ¶ 35.

On December 29, 2006, Westford Defendants Stafford, Bennington, Adams, and Carston purchased a sixth series of notes with an aggregate face value of $15 million. Id. at ¶ 36. The outstanding principal balance of the notes, accrued interest, and fees – totaling $24,616,667 – were repaid in full in or around December 28, 2007. Id. at ¶ 37.

On March 30, 2007, Westford Defendants Stafford, Bennington, and Adams purchased a seventh series of notes with an aggregate face value of $20 million. Id. at ¶ 38. The outstanding principal balance of the notes, accrued interest, and fees – totaling $24,896,334 – were repaid in full in or around April 15, 2008. Id. at ¶ 39.

The Trustee has not alleged that any payments received by the Westford Defendants were made other than in accordance with the terms and maturity dates set out in the various agreements governing the Solow Notes. Nor does the Trustee allege that the Westford Defendants took any steps to obtain payment of the Solow Notes prior to maturity. Id. at ¶¶ 40-41. In addition, there is no evidence that would establish that the Westford Non-Transferees received any proceeds from the Solow Notes. Id. at ¶ 42. Nor is there any evidence that the Westford Agents exercised dominion or control over the proceeds. Id. at ¶ 24.

## PRIOR PROCEEDINGS

On December 19, 2011, the Court issued a Memorandum Decision Granting in Part and Denying in Part Westford's Motion to Dismiss the Amended Complaint [Docket No. 31]. The Court ordered that (i) Count VI is dismissed to the extent that the Trustee sought to avoid and recover repayment of the Westford Defendants' principal investment in the Solow Notes and that (ii) Count VII is dismissed in its entirety without prejudice. The Court also noted, "The Amended Complaint fails to allege that each of the defendants received a transfer; it alleges that only some did," but did not specifically address the legal effect of that omission. Docket No. 31 at 11 n.7; Gowan v. Westford Asset Mgmt., LLC (In re Dreier LLP), 462 B.R. 474, 483 n.7 (Bankr. S.D.N.Y. 2011) (same).

The Trustee moved for partial summary judgment against certain Westford Defendants on December 21, 2012. Notably, the Trustee has not moved for summary judgment against the Westford Non-Transferees or the Westford Agents.

## ARGUMENT

**A.    Standard for Summary Judgment Under Rule 56**

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and the movant "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Fay

- 6 -

v. Oxford Health Plan, 287 F.3d 96, 103 (2d Cir. 2002) (affirming grant of defendant's motion for summary judgment).[2] A fact is material if it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Konikoff v. Prudential Ins. Co. of Am., 234 F.3d 92, 97 (2d Cir. 2000) (affirming grant of defendant's motion for summary judgment) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

On a summary judgment motion, "the mere possibility that a factual dispute may exist, without more, is not sufficient to overcome a convincing presentation by the moving party." DeFabio v. East Hampton Union Free Sch. Dist., 623 F.3d 71, 81 (2d Cir. 2010) (citation omitted). Once the moving party has carried its burden of showing that no material fact is in dispute, the party opposing the motion "may not rest upon the mere allegations or denials of [her] pleading, but . . . must set forth specific facts showing there is a genuine issue for trial." Gnazzo v. G.D. Searle & Co., 973 F.2d 136, 138 (2d Cir. 1992) (affirming district court's grant of defendant's motion for summary judgment) (citing Liberty Lobby, 477 U.S. at 248). A party opposing summary judgment "'must do more than simply show that there is some metaphysical doubt as to the material facts,' . . . and [it] 'may not rely on conclusory allegations or unsubstantiated speculation.'" Jeffreys v. City of N.Y., 426 F.3d 549, 554 (2d Cir. 2005) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Fujitsu Ltd. v. Fed. Express Corp., 247 F.3d 423, 428 (2d Cir. 2001)).

---

[2] "Summary judgment is not an all-or-nothing proposition; Rule 56(a) permits a party to move for summary judgment as to a claim, defense, or part of a claim or defense." In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig., 824 F.Supp.2d 524, 533 (S.D.N.Y. 2011) (denying plaintiff's motion for partial summary judgment). Thus, it follows that a party may concurrently move for partial summary judgment on certain issues, and yet also oppose a grant of summary judgment on others. See generally Huff v. Cruz Contracting Corp., 643 F.Supp.2d 344, 352 (S.D.N.Y. 2009) (defendant both opposed plaintiff's motion for summary judgment generally, and cross-moved for partial summary judgment on particular issue; court granted defendant's cross-motion).

Here, the Trustee cannot genuinely dispute the material facts discussed above, and partial summary judgment is therefore warranted in favor of the Westford Defendants.

**B.    The Court Should Grant Partial Summary Judgment in Favor of the Westford Non-Transferees Because They Received No Transfers**

The Court should dismiss all claims against the Westford Non-Transferees because none of them received any transfers, payments, or other benefits from DLLP.

Fraudulent conveyance claims against a party who is neither a transferee nor a beneficiary must be dismissed on summary judgment. <u>Brenner v. Philips, Appel & Walden, Inc.</u>, 1997 WL 33471053, at *5 (S.D.N.Y. July 22, 1997) (dismissing fraudulent conveyance claim on summary judgment motion where no evidence showed that individual defendants were either transferees or beneficiaries of funds at issue); <u>Foufas v. Leventhal</u>, 1995 WL 332020, at *2 (S.D.N.Y. June 5, 1995) (granting defendants' motion for summary judgment and stating "New York courts recognize no cause of action against a person in his position who was neither a transferee nor a beneficiary of an allegedly fraudulent transfer."); <u>Stern v. Singh Factors, LLC (In re Shore to Shore Realty Inc.)</u>, Case No. 8-08-72760 (REG), Adv. Pro. No. 8-09-08296 (REG), 2011 WL 350526, at *5 (Bankr. E.D.N.Y. Feb. 01, 2011) ("A fraudulent conveyance claim seeking to recover money damages can only be maintained against a person who participates in the fraudulent transfer as either the transferee of the assets or the beneficiary of the conveyance.") (citations omitted); <u>FDIC v. Porco</u>, 75 N.Y.2d 840, 842 (1990) (New York Debtor and Creditor Law "cannot fairly be read as creating a remedy against nontransferees who, like defendants here, are not alleged to have dominion or control over those assets or to have benefited in any way from the conveyance."); <u>Gallant v. Kanterman</u>, 603 N.Y.S.2d 315, 318 (1st Dep't 1993) (affirming dismissal of fraudulent conveyance action where defendants were neither transferees or beneficiaries).

To survive a summary judgment motion, the plaintiff must show that fraudulently transferred assets were *actually* paid to subsequent transferees. Roselink Investors, LLC v. Shenkman, 386 F.Supp.2d 209, 227 (S.D.N.Y. 2004) (granting summary judgment for defendants on fraudulent conveyance claims); Silverman v. United Talmudical Acad. Torah Vyirah, Inc. (In re Allou Distribs., Inc.), 446 B.R. 32, 67 (Bankr. E.D.N.Y. 2011) (dismissing fraudulent conveyance claims against defendants because trustee provided no evidence that defendants received direct transfers); Brenner, 1997 WL 33471053, at *5; see also Paradigm BioDevices, Inc. v. Viscogliosi Bros., LLC, 842 F.Supp.2d 661, 666-67 (S.D.N.Y. 2012) (dismissing fraudulent transfer claims against individual defendants where only conclusory statements suggested that individual defendants were beneficiaries of transfers).

Mere ownership interest in a corporation does not suffice to establish transferee status. In Roselink, 386 F.Supp.2d 209, creditors brought fraudulent conveyance claims against directors of a subsidiary whose parent entered into bankruptcy. Id. at 213-14. Shortly before the bankruptcy filing, the directors authorized a loan from subsidiary to parent. Id. at 214. The creditors argued that the loan was a fraudulent conveyance and that the directors had personally benefitted from the loans. Id. at 227. The court held that "the Creditors have failed to present any evidence demonstrating a benefit to defendants from the Loan, an element essential to [the plaintiffs'] case, and on which they will bear the burden of proof at trial." Id. (quotations omitted). Even though one of the directors of the subsidiary held ownership interests in two companies that together owned 35% of the common stock of the bankrupt parent, the court also held that the director's "ownership in two companies holding stock in the [bankrupt parent] is too attenuated a relationship to render [him] a transferee or beneficiary of the Loan." Id.

Similarly, in Brenner, 1997 WL 33471053, the court found no evidence that defendants had benefited from a transfer to a company in which one defendant owned 35% of the stock. Id. at *5. The court found that mere assertions of a "possibility that monies were withdrawn" by the individual defendants could not withstand a motion for summary judgment. Id. at *4.

Mere receipt of compensation from a transferee corporation also does not render an employee a transferee or beneficiary of the transfer. Roselink, 386 F.Supp.2d at 227. In Roselink, the second director sued on fraudulent conveyance claims received a salary as president and chief executive officer of the bankrupt parent. Id. The court held that the parent company was "entitled" to pay the director a salary and that "there was no evidence that his salary was in any way derived from the transferred property." Id.

Here, the fact that Mr. Stevanovich had ownership interests in WAM, SGS, and WGAM, the investment managers for the Westford funds, is too attenuated to hold him personally liable for any of the Trustee's fraudulent transfer claims. See Roselink, 386 F.Supp.2d at 227. The Trustee cannot show that Mr. Stevanovich received any indirect (much less direct) benefits from the loans to the Westford Defendants, and even if she can, indirect benefits do not suffice to support fraudulent conveyance claims. More importantly, the Trustee has no evidence that the Westford Non-Transferees received proceeds of the Solow Notes. To make that showing, the Trustee must perform a tracing analysis of the funds DLLP transferred to the Westford Defendants, which she has not done. Because the Solow Notes outstanding to the Westford Defendants never represented more than 3.5% of the Westford Defendants' total assets under management, there is good reason to believe that even if a tracing analysis had been performed, the cash used to pay WAM, WGAM, and SGS management fees did not represent proceeds of the Solow Notes.

Mr. Stevanovich received no transfers from DLLP.  Westford Defendants' Rule 56.1 Statement ¶ 8.  To the extent that Mr. Stevanovich received compensation for his work for Westford Defendants that received DLLP transfers, receipt of compensation cannot establish liability for fraudulent transfer claims, in the absence of evidence that the property transferred initially was directly remitted to the subsequent transferee.  See Roselink, 386 F.Supp.2d at 227; Westford Defendants' Rule 56.1 Statement ¶ 9.

## C. The Court Should Grant Partial Summary Judgment in Favor of the Westford Agents

The Court should dismiss all claims against the Westford Agents because, as "mere conduits," they cannot be held liable.  Courts "reject[] a test that equates mere receipt [of funds] with liability, declining to find 'mere conduits' to be initial transferees . . . ." Christy v. Alexander & Alexander of N.Y. Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey), 130 F.3d 52, 57 (2d Cir. 1997) (affirming grant of summary judgment to defendant).  The court in Christy held that "a commercial entity that, in the ordinary course of its business, acts as a mere conduit for funds and performs that role consistent with its contractual undertaking in respect of the challenged transaction, is not an initial transferee within the meaning of § 550(a)(1)." Id. at 59.  Thus, "[i]t is clear that when an entity acts as a 'financial intermediary,' exerts no dominion over the funds, and has no discretion to use the funds as it wishes, that entity is a mere conduit and is not an 'initial transferee' for purposes of 11 U.S.C. § 550(a)(1)." McHale v. Boulder Capital LLC (In re The 1031 Tax Group, LLC), 439 B.R. 47, 69 (Bankr. S.D.N.Y. 2010).

The rule against "conduit" liability is well-established in this and other jurisdictions.  See Sec. Investor Prot. Corp. v. Stratton Oakmont, Inc., 234 B.R. 293, 312-13 (Bankr. S.D.N.Y. 1999) ("Every Circuit that has encountered the 'initial transferee' question has adopted the

- 11 -

'dominion and control' test . . . .") (citing cases); Hooker Atl. (7) Corp. v. Hocker (In re Hooker Invs., Inc.), 155 B.R. 332, 337-38 (Bankr. S.D.N.Y. 1993) ("Parties that act as conduits and simply facilitate the transfer of funds or property from the debtor to a third party generally are not deemed initial transferees . . . the initial transferee is one who is legally able to use the money for his own purposes."); Geltzer v. D'Antona (In re Cassandra Grp.), 312 B.R. 491, 496-97 (Bankr. S.D.N.Y. 2004) (granting partial summary judgment for defendant who was a mere conduit); In re Moskowitz, 85 B.R. 8, 10-11 (E.D.N.Y. 1988) (reversing bankruptcy court judgment and holding that title company was not initial transferee). The Second Circuit has held that it is inequitable to impose the strict liability meant for an initial transferee on a conduit merely because the conduit was the first to physically hold the money, but was powerless to "put the money to [its] own purposes." Christy, 130 F.3d at 57.

As discovery has shown, the Westford Agents acted solely as conduits of other Westford entities regarding the Solow Notes. See, e.g., Am. Compl. [Docket. No. 14] ¶¶ 13, 41; Westford Defendants' Rule 56.1 Statement ¶¶ 20, 21. The Westford Agents had no control over any funds any Westford Defendant received in connection with the Solow Notes, and had no discretion over how those funds were used. Westford Defendants' Rule 56.1 Statement ¶ 20; see CNB Int'l, Inc. Litig. Trust v. Lloyds TBS Bank, PLC (In re CNB Int'l, Inc.), 440 B.R. 31, 38-40 (Bankr. W.D.N.Y. 2010) (holding that entity was a "mere conduit" because its "receipt of . . . funds in the first instance was conditioned upon their immediate transfer to" another entity). Furthermore, the Westford Agents did not receive any funds as repayments on the Solow Notes. Thus, the Westford Agents cannot be held liable on the Trustee's fraudulent transfer claims.

## CONCLUSION

For the reasons discussed above, the Court should enter partial summary judgment in the Westford Defendants' favor, dismissing all claims against the Westford Non-Transferees and the Westford Agents.

Dated:  New York, New York
        February 8, 2013

Respectfully submitted,

/s/ Steven C. Bennett
Steven C. Bennett
Howard F. Sidman
Michael D. Silberfarb
JONES DAY
222 E. 41st St.
New York, NY  10017
Telephone:  (212) 326-3939
Facsimile:   (212) 755-7306

Tobias S. Keller (admitted *Pro Hac Vice*)
JONES DAY
555 California Street
26th Floor
San Francisco, CA  94104
Telephone:  (415) 626-3939
Facsimile:   (415) 875-5700

*Counsel for the Westford Defendants*