DIAMOND McCARTHY LLP
Attorneys for Sheila M. Gowan,
Chapter 11 Trustee for Dreier LLP
620 Eighth Avenue, 39th Floor
New York, New York 10018
Telephone: (212) 430-5400
Facsimile: (212) 430-5499
Howard D. Ressler, Esq.
Stephen T. Loden, Esq.
J. Benjamin King, Esq.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
:
**In re:**                                                   :
:
    **DREIER LLP,**                      :
:    **Chapter 11**
                   **Debtor.** :
:    **Case No. 08-15051 (SMB)**
:
**SHEILA M. GOWAN, CHAPTER 11**                              :
**TRUSTEE FOR DREIER LLP,**                                  :
:
               **Plaintiff,** :
             **v.**     :    **Adv. Pro. No.:**
:    **10-05447 (SMB)**
**WESTFORD ASSET MANAGEMENT LLC,**                           :
**ET AL.,**                                                  :
:
             **Defendants.** :
-------------------------------------------------------------x

**TRUSTEE'S OPPOSITION TO THE WESTFORD DEFENDANTS'**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Sheila M. Gowan (the "Trustee"), chapter 11 trustee for Dreier LLP ("DLLP"), respectfully submits this brief in opposition to the Westford Defendants' Motion for Partial Summary Judgment (the "Motion") [Dkt. # 77].

## I.    PRELIMINARY STATEMENT

The Westford Defendants are comprised of three types of entities -- "Funds," "Managers," and special purpose entities (or "SPEs"). The founder of the Westford Defendants, Steve Stevanovich, is also a defendant. The Funds purchased fraudulent promissory notes supposedly issued by Solow Realty and Development Company ("Solow"). Marc Dreier caused DLLP to transfer DLLP property to the Funds, ostensibly to pay the fees, interest, and principal "owing" on the fraudulent Solow notes. The Managers directed the Funds' note purchases, and Mr. Stevanovich owns the Managers and invested in the Funds. While the SPEs were identified as the lenders on the notes, they neither funded the purchase of the notes, nor received any transfers from DLLP in connection with the notes.

The Motion seeks judgment in favor of the Managers and Mr. Stevanovich on the ground that they did not receive any transfers of DLLP property. However, the evidence shows that the Funds paid the Managers management fees and incentive fees from the Funds' accounts that included funds transferred from DLLP. In addition, Mr. Stevanovich retained the Managers' net profits, which profits the DLLP transfers contributed to. Thus, an issue of fact exists as to whether Mr. Stevanovich received transfers of DLLP property.

The Motion also seeks judgment in favor of the SPEs on the basis that they were "mere conduits," and thus not transferees for purposes of the Trustee's fraudulent transfer claims. However, the SPEs were entities for whose benefit the DLLP transfers were made. While they received no transfers, Marc Dreier made the DLLP transfers because the SPEs were identified as

1

the lenders on the fraudulent Solow notes. Moreover, the SPEs are wholly owned by the Funds, and it is reasonable to conclude that they benefited from DLLP's transfers to the Funds.

For these reasons, the Trustee respectfully requests that this Court deny the Motion.

## II. BACKGROUND

The Funds -- Westford Special Situations Master Fund L.P. ("WSSMF"), Epsilon Global Master Fund, LP, Epsilon Global Master Fund II, LP, and Epsilon Distressed Strategies Master Fund, LP -- received transfers from DLLP pursuant to their investments in fraudulent Solow notes.[1] *See* Trustee's Reply at 3-6. The Funds collectively received transfers from DLLP totaling $138,854,113. *See* WDSOF ¶¶ 26-39; SJDSOF ¶ 44.[2] The Funds collectively received profits of $23,854,113 based on their investments in the fraudulent Solow notes. *See* SJDSOF ¶ 4.

The Managers -- Westford Asset Management LLC ("WAM"), SGS Asset Management, Ltd. ("SGS"), and Westford Global Asset Management, Ltd. ("WGAM") -- served as investment advisors to the Funds. WDSOF ¶¶ 10, 12. The Managers are separate entities in name only. They had the same employees, served the same functions, and were treated interchangeably by their president, Mr. Stevanovich. *See* Trustee's Responsive SOF ¶¶ 1-3.[3]

---

[1] The Westford Defendants, in their Motion, define "Westford Funds" to include Westford Special Situations Fund, Ltd. ("WSSFL"). The Trustee initially named WSSFL as a defendant in the case because WSSFL appears as a lender on a January 7, 2004, fraudulent note. However, the note was subsequently amended to identify WSSMF as the lender, and WSSMF funded the January 7, 2004, investment. In addition, WSSMF, not WSSFL, appears to have received transfers from DLLP. *See* Trustee's Reply in Support of Her Motion for Partial Summary Judgment Against Certain Westford Defendants at 4-5 ("Trustee's Reply"). Accordingly, the Trustee expects to shortly seek the voluntary dismissal of her claims against WSSFL.

[2] Westford Defendants' Statement of Undisputed Material Facts in Support of Motion for Partial Summary Judgment Pursuant to Local Bankruptcy Rule 7056-1 [Dkt. # 78] ("WDSOF"); Westford Defendants' Statement of Additional Material Facts Precluding the Trustee's Motion for Partial Summary Judgment and Response to the Trustee's Statement of Undisputed Material Facts in Support of the Trustee's Motion for Partial Summary Judgment of the Trustee's Adversary Complaint ("SJDSOF") [Dkt. # 83].

[3] Trustee's (1) Response To The Westford Defendants' Statement Of Undisputed Material Facts And (2) Statement Of Additional Material Facts Precluding The Westford Defendants' Motion For Partial Summary Judgment (March 8, 2013) ("Trustee's Responsive SOF").

The Managers directed the Funds' purchases of fraudulent Solow notes. *See* WDSOF ¶¶ 10-12. The Funds compensated the Managers in two ways. First, the Funds paid the Managers management fees, calculated as 2% or 1.5% of the "Net Asset Value" (or "NAV") of the Funds. Second, they received incentive fees, calculated as 20% of the profits of the Funds. Each of these fees were calculated on an annual basis. *See* Trustee's Responsive SOF ¶¶ 4-8.

Mr. Stevanovich owned the Managers, and he personally kept the Managers' net profits. *See id.* ¶¶ 9-10.

The Funds owned the SPEs: Stafford Towne, Ltd.; Adams International Trading, Ltd; Carston Spires, Ltd.; and Bennington International Holdings, Ltd. WDSOF ¶ 17. The SPEs were generally identified as the lenders on the fraudulent notes. *See* WDSOF ¶¶ 26-39. It appears that the SPEs had no role in the transactions other than being identified as lenders, and they received no transfers from DLLP. *See* WDSOF ¶¶ 19-24.

### III. ARGUMENT

**A.    The Managers and Mr. Stevanovich Were Subsequent Transferees**

The evidence shows that the Managers were subsequent transferees of DLLP property in the form of management fees and incentive fees paid by the Funds. As noted above, the Managers received annual management fees based on a set percentage (1.5% or 2%, depending on the Fund) of the Fund's NAV. Here, DLLP transfers contributed to the NAVs of the Funds in particular years in readily calculable amounts, and the management fees that the Managers received included 1.5% or 2% of the amounts transferred to the Funds.

In addition, the Managers received incentive fees calculated by multiplying the Funds' annual profits by 20%. The amount of profit each Fund made based on its transfers to and from DLLP is readily calculable. Indeed, those calculations are already set forth in the statement of

3

facts submitted by the Trustee in support of her motion for partial summary judgment. These calculations are sufficient to trace the funds transferred to a subsequent transferee, and thus partial summary judgment against the Trustee is not appropriate. *See Picard v. Charles Ellerin Revocable Trust (In re Bernard L. Madoff Investment Secs. LLC),* 2012 WL 892514, at *3 (March 14, 2012) (denying summary judgment even though trustee could not specify which portion of subsequent transfers were attributable to fraudulent transfers from debtor; holding that the trustee "need only allege sufficient facts to show the relevant pathways through which the funds were transferred from [the debtor] to [the subsequent transferee]); *McHale v. Boulder Capital LLC (In re 1031 Tax Group, LLC),* 439 B.R. 78, 82-84 (Bankr. S.D.N.Y. 2010) (holding that trustee could recover a *pro rata* portion of a transfer from an account that was commingled with Ponzi scheme proceeds and other funds).

Finally, Mr. Stevanovich testified that there was no meaningful difference between the Managers:

> What happens is I only have one group of people that manages -- which I work [*sic*] to manage all my funds. So, what happens is it doesn't matter, for example, from an employee perspective whether they work for Westford Asset Management, LLC or whether they work for the Epsilon version of that Delaware [*sic*.] is Epsilon Investment Management, LLC.
>
> So, for example, if I have a Florida office and I have a receptionist, it doesn't matter whether I have her paycheck cut from Epsilon Investment Management, LLC or Westford Asset Management, LLC. She still works for the same fund group. The reason for the many entities is because of the necessity of the way the fund structure is structured. **But I see it all as one company. And everyone works for the same company, and we manage all of these various funds.** We just need the various entities for the funds, not for the -- for the company that employs everyone.

Stevanovich Dep. at 28:11-29:9 (emphasis added) (March 8, 2013 King Decl, Ex. 23).

4

> When we charge the 1-1/2 percent or 2 percent, depending on the fund, it is charged only once; in other words, either at the master level or at the feeder level so it's not that each one of these entities charges the same amount so it's double, triple, quadruple charge.
>
> So we get paid only once. We can take it out of the master or we can take it out at the feeders, but the entity --
>
> So, if we take it out of the feeder, then Westford Asset Management, LLC would get paid. If we take out the master, then Westford Global Asset Management, Ltd. will get paid. But we only pay ourselves once.
>
> ***And, of course, it doesn't matter to with us which entity gets paid because it always goes into the same pocket***.

Stevanovich Dep., 44:14-45:15 (emphasis added) (March 8, 2013 King Decl, Ex. 23). Thus, distinguishing between the different management entities for purposes of tracing subsequent transfers is not necessary. They are all "one company" and no matter which entity gets paid, the money "always goes into the same pocket."[4] At a minimum, there is an issue of material fact as to whether a transfer to one Manager may be considered a transfer to all Managers.

The Motion also seeks judgment for Mr. Stevanovich on the ground that he did not receive any transfers. But the evidence indicates that Mr. Stevanovich owned the Managers (Trustee's Responsive SOF ¶ 9), and that he received the net profits of the Managers. *Id.* ¶ 10. Thus, to the extent that a portion of the Manager's profits were derived from DLLP property, Mr. Stevanovich was a subsequent transferee of DLLP property, and summary judgment is not appropriate.

---

[4] In addition, particular managers can be linked to particular investments. WAM and WGAM signed various of the fraudulent "Term Loan Agreements" on behalf of Westford Special Situations Master Fund, LP ("WSSMF"). *See* Stevanovich Decl., Exs. S1 at WAM1489, S5 at WAM550, S9 at WAM438, S13 at WAM1545, S17 at WAM5840, S18 at WAM1635. Thus, there is an issue of fact as to whether WAM received management fees and incentive fees with respect to these specific investments.

5

B.   **The SPEs Were Transfer Beneficiaries**

The Motion argues that this Court should dismiss the SPEs on the ground that they were "mere conduits." Motion at 11-12. A "conduit" is an entity that receives transfers but never exercises control over the funds transferred. *See id.* (citing cases). However, the SPEs were not "conduits" because, according to the facts set forth by the Westford Defendants, the SPEs did not receive any transfers at all. Instead, the Funds made and received all of the transfers to and from DLLP. *See* WDSOF ¶¶ 4, 19-22.

Although the SPEs did not receive any transfers, they were "entit[ies] for whose benefit" the transfers from DLLP to the Funds were made. *See* 11 U.S.C. § 550(a)(1). The fraudulent Solow notes Marc Dreier sold the Westford Defendants identified the SPEs as the lenders and ostensibly required "Solow" to make fee, interest, and principal payments to the SPEs (except for a few notes on which one of the funds--WSSMF--was identified as the lender). *See* Stevanovich Decl., Exs. S.1-S.19, S.22-S.30. Thus, the SPEs fall within the literal meaning of transfer beneficiaries under Section 550(a)(1), *i.e.,* they were entities for whose benefit such transfers were made.

In addition, although the Funds received the transfers from DLLP, the SPEs were owned by the Funds. *See* WDSOF ¶ 17. Because the SPEs were identified on the notes, and because the SPEs were owned by the Funds that received the DLLP transfers, the evidence supports the conclusion that the SPEs benefited from the transfers. *Terry v. Meredith (In re Meredith),* 572 F.3d 372, 375-76 (4th Cir. 2008) (transfer beneficiary must have received a benefit to be liable under Section 550(a)(1)).

6

## IV. CONCLUSION

For all the reasons stated above, the Trustee respectfully requests that this Court deny the Motion.

March 8, 2013

                                      Respectfully submitted:

                                      */s/ J. Benjamin King*
                                    Howard D. Ressler, Esq.
                                    Stephen T. Loden, Esq.
                                    J. Benjamin King, Esq.
                                    DIAMOND MCCARTHY LLP
                                    620 Eighth Avenue, Suite 3900
                                    New York, NY 10018
                                    (212) 430-5400
                                    *Counsel for Sheila M. Gowan,*
                                    *Chapter 11 Trustee for Dreier LLP*